UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASA ENTERPRISE, INC. and MANJIT SINGH,<br><br>　　　　　Plaintiffs/Counterclaim Defendants,<br><br>　　v.<br><br>STAN BOYETT & SON, INC.,<br><br>　　　　　Defendant/Counter Complainant. | Case No. 1:21-cv-00915-CDB<br><br>**ORDER DENYING PLAINTIFFS' EX-PARTE, UNOPPOSED APPLICATION TO APPROVE STIPULATION AND RETAIN JURISDICTION OVER SETTLEMENT**<br><br>(Doc. 44) |

Pending before the Court is Plaintiffs' ex-parte, unopposed application seeking an order of this Court approving the parties' stipulation for entry of judgment and retaining jurisdiction after the parties' anticipated dismissal of the action over the enforcement of an undisclosed settlement agreement. For the reasons set forth below, the Court declines the enter the proposed order, declines to retain jurisdiction over the enforcement of the undisclosed settlement agreement, and orders the parties to file a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) within 21 days.

## **FACTUAL BACKGROUND**[1]

Plaintiffs own and operate a gas station and convenience store in Bakersfield. Plaintiffs

---

[1] The following summary of facts is derived from a joint report prepared by the parties in connection with an earlier discovery dispute. *See* Doc. 34

and Defendant Boyett were parties to a 76 Branded License and Sales Agreement (the "Franchise Agreement"), pursuant to which Plaintiffs agreed that the gas station (not the convenience store) would be branded 76, and that Plaintiffs would purchase and accept from Boyett, minimum quantities of 76-branded gasoline. The 76 brand is owned by Phillips 66 Company ("P66"). Boyett is what is known in the retail petroleum industry as a "jobber," which is a middleman between refining companies and fuel retailers (gas stations). Boyett and P66 are parties to a Trademark License Agreement pursuant to which P66 has granted Boyett the authority to enter into sub-license agreements (franchise agreements) with gas stations and requires Boyett to enforce P66's trademark and image standards at any gas station branded 76 through a wholesale marketing agreement with Boyett. The Franchise Agreement between Plaintiffs and Boyett required Plaintiffs to maintain the 76-branded gas station according to minimum imaging standards set by P66.

The franchise relationship between Plaintiffs and Boyett is governed by the Petroleum Marketing Practices Act, 15 U.S.C. 2801, et seq. ("PMPA"). The PMPA was enacted in 1978 to protect franchisees from arbitrary or discriminatory termination or nonrenewal of their franchises. "[T]he centerpiece of the Act lies in its prohibition against a franchisor terminating or refusing to renew a franchise, except for the reasons specified in the Act, *see*, 15 U.S.C. § 2802, and in the stringent notice requirements it imposes on a terminating or nonrenewing franchisor, *see*, 15 U.S.C. § 2804. The Act, then, is directed first and foremost at the permissible grounds for termination or nonrenewal of franchises and at the manner in which such termination or nonrenewal is effectuated, or, in other words, at the why and how of ending a franchise." *Lasko v. Consumers Petroleum of Conn., Inc.*, 547 F.Supp. 211, 216 (D. Conn. 1981).

Plaintiffs filed suit against Boyett on June 9, 2021, seeking damages and injunctive relief under the PMPA and for breach of contract.  (Doc. 1).  Plaintiffs allegde that Boyett terminated the franchise after Plaintiffs failed two consecutive "mystery shop" inspections and failed to cure by achieving a passing score on the third consecutive "mystery shop" inspection. Plaintiffs contended, among other things, that the PMPA does not permit Boyett to terminate a franchise based solely on a franchisee's purported failure to comply with arbitrary, subjective and

draconian "mystery shopper" inspections.

On July 19, 2021, Boyett answered and asserted counterclaims seeking declaratory relief and damages in the amount of $146,670.19 under the PMPA and for breach of contract. (Doc. 14).

## THE EX PARTE APPLICATION

On December 1, 2022, the parties filed a joint report representing that they had "reached a settlement in principle." (Doc. 41). On January 5, 2023, the parties filed a joint motion requesting that the trial dates be vacated, explaining: "Shortly hereafter, the Parties will be filing a request for dismissal with prejudice, which will include a request that the Court retain jurisdiction to enforce the settlement." (Doc. 42). The Court granted the motion and ordered the parties to file dispositional documents no later than January 27, 2023. (Doc. 43). On that date, counsel for Boyett filed the instant ex-parte (unopposed) application.

In the ex-parte application, the parties ask the Court to "hereby order" and "approve" a stipulation in which they make certain agreements and purport to bind the Court to entering a stipulated judgment in the event a party defaults on their settlement obligations. Neither party admits liability in the stipulation; instead, the stipulation sets forth that, pursuant to the terms of an undisclosed settlement agreement, Plaintiffs will pay Boyett the sum of $146,670.90 by June 1, 2024, to resolve the parties' dispute.

## DISCUSSION

Plaintiffs and Boyett have not shown that exercising jurisdiction over the parties' settlement agreement is "essential to the conduct of federal-court business." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). "The settlement is just [a] contract to be enforced in the usual way ..." unless the federal court exercises jurisdiction over it. *Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002). "The normal remedy for a failure to abide by a settlement of federal litigation is a suit on the settlement contract. Such a claim arises under state law and must proceed in state court" unless the basis for federal jurisdiction was diversity. *Kay v. Board of Educ. of City of Chicago*, 547 F.3d 736, 737 (7th Cir. 2008). Generally, a federal question claim is "extinguished by the settlement and converted ... into a claim under a contract."

*Id*. at 739.

      While the Court acknowledges its discretion to retain jurisdiction over the parties' private settlement agreement, the parties may not confer subject matter jurisdiction via consent (*see Collins v. Thompson*, 8 F.3d 657, 659 (9th Cir. 1993)) and the Court declines to retain jurisdiction in this case for a number of reasons. First, according to the stipulation, the parties' settlement agreement requires Plaintiffs to pay Boyett the precise amount of damages alleged in Boyett's breach of contract counterclaims. Neither party admits liability under the PMPA – the "federal question" over which this Court was called upon to assert jurisdiction. Had the terms of the parties' settlement agreement required Boyett to admit liability under the PMPA or otherwise suggested that Plaintiffs' PMPA claims were meritorious (*e.g*., Boyett to pay Plaintiffs a sum certain), the Court would be more open to enforcing a settlement that directly implicated a federal statute. However, a proposed stipulated judgment calling for a monetary award that resolves a dispute between private parties, unlike traditional consent decrees implicating a federal question, does not require or warrant this Court's supervision. *See Wigton v. Murphy*, 410 F. Supp.3d 1121, 1122 (D. Mont. 2019).

      Next, the Court finds that both parties have already agreed in a writing signed by both parties to the terms for which they seek entry of judgment, which means the terms are enforceable. Thus, it appears there is no need for the Court to separately enter judgment. *See Bd. Of Trustees v. Summit Commercial Floors, Inc*., 2021 WL 2014793, *4 (S.D. Cal. May 20, 2021) (citing *Tur v. YouTube, Inc*., 562 F.3d 1212, 1214 (9th Cir. 2009)).

      Finally, the ex-parte application and stipulation the parties ask the court to "hereby order" and "approve" references a "Settlement Agreement" under which the payments required in the stipulation are to be made. It is unclear whether the referenced, separate settlement agreement, which has not been shown to the Court, is intended to be incorporated by reference into the stipulation. Certainly, the Court will not exercise jurisdiction over terms of a settlement agreement it has not seen.

      Since it is clear from the ex-parte application and stipulation that the parties have settled their respective claims, the claims are subject to dismissal under Federal Rule of Civil Procedure

41(a)(2) even though the parties have not complied with a stipulation for dismissal. This dismissal order could issue since "literal compliance with the stipulation requirement has not been required where the agreement of all parties is apparent." *Garber v. Chicago Mercantile Exchange*, 570 F.3d 1361, 1366 (Fed.Cir.2009) (internal citation and quotations omitted). *Accord, Eitel v. McCool*, 782 F.2d 1470, 1472-73 (9th Cir. 1986) (explaining that "[t]he court reasonably concluded that the parties had the requisite mutual intent to dismiss the action with prejudice" when the court "f[ound] that the parties' ... representations to the court agreeing to a dismissal with prejudice constituted a voluntary stipulated dismissal under Rule 41(a)(1)(ii)"). The Court declines to order dismissal at this juncture as it is apparent the parties have worked diligently to reach a negotiated resolution with the expectation the Court would retain jurisdiction over the settlement terms. Instead, the Court will grant the parties 21 days to meet and confer prior to filing an appropriate stipulation for dismissal.

## **CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED:

1. The ex-parte, unopposed application to approve stipulation and retain jurisdiction over settlement (Doc. 44) is DENIED; and

2. The parties shall file a stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) within 21 days of entry of this order.

IT IS SO ORDERED.

Dated:   **February 3, 2023**          _____
                                        UNITED STATES MAGISTRATE JUDGE